No. 90,255

STATE OF KANSAS, *Appellee,* v. MICHAEL A. PATTEN, *Appellant.*

(122 P.3d 350)

Opinion filed November 10, 2005.

*Patrick H. Dunn,* assistant appellate defender, argued the cause and was on the brief for appellant.

*Ty Kaufman,* county attorney, argued the cause, and *Phill Kline,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Michael Patten was convicted by a jury of manufacture of methamphetamine, possession of methamphetamine, felony possession of drug paraphernalia, and possession of marijuana. Patten was sentenced to 154 months' imprisonment for manufacture of methamphetamine, 11 months each for possession of methamphetamine and drug paraphernalia, and 365 days for possession of marijuana. The terms are concurrent. The Court of Appeals affirmed his convictions, vacated the sentence for manufacture of methamphetamine, and remanded for resentencing to a drug severity level 3 felony pursuant to *State v. McAdam,* 277 Kan. 136, Syl. ¶ 3, 83 P.3d 161 (2004). This court granted Patten's pe-

tition for review on the single issue of whether the charges of possession of drug paraphernalia in violation of K.S.A. 65-4152(a)(3) and manufacture of methamphetamine in violation of K.S.A. 65-4159 are multiplicitous.

On the evening of December 27, 2001, Deputy Jon Hawkinson was sent to investigate a suspicious vehicle that was parked along the side of a county road in McPherson County. The deputy found a Ford Bronco with a small travel trailer attached; Patten was in the driver's seat, and Haril D. Ripka, Jr., was in the front passenger's seat. Patten told the officer his driver's license might be in the travel trailer. Patten had purchased the travel trailer in November 2001. Patten unlocked the trailer with a key that he took from his pants pocket. After Patten was unable to produce his identification, Hawkinson called for back-up. While waiting for back-up, Hawkinson checked the Bronco's license plate and was informed that the vehicle had been reported stolen. Patten and Ripka were arrested.

When Highway Patrol Trooper Chris Bauer and another officer arrived at the scene, they went into the trailer to check for someone who might pose a threat. While checking the trailer, Bauer noticed two propane tanks at one end of the trailer and smelled anhydrous ammonia. From his training and experience, Bauer was aware that these items were used in the production of methamphetamine. Bauer informed Deputy Hawkinson that he suspected there was a methamphetamine lab inside the trailer. Hawkinson then contacted the narcotics detective, Darren Frazier. While waiting for Frazier, Hawkinson and Bauer looked inside the Bronco. In the driver's seat they found a shaving bag that contained suspected methamphetamine, a 9 millimeter handgun, a loaded magazine, and drug paraphernalia—a spoon with burnt residue, a piece of aluminum foil with burnt residue, and a lighter. Testing of the powder found in the shaving bag revealed it was methamphetamine. When searched, Patten had marijuana in his front pocket.

Detective Frazier obtained a search warrant for the trailer and found a number of items that would be used in a methamphetamine lab. The items included glass jars with chemical residue inside, Coleman fuel, salt, gassing generators, anhydrous ammonia,

propane bottles, kitchen matches, Sudafed, coffee filters, muriatic acid, and sulfuric acid. The coffee filters smelled of anhydrous ammonia. Officers also found lithium batteries in the Bronco and a list of items used in methamphetamine production in Patten's wallet. At trial, Frazier testified he was certain that the trailer contained a mobile methamphetamine laboratory and that, based on the anhydrous ammonia in the trailer and solvent in containers in the trailer's refrigerator and bathroom, he believed methamphetamine production was ongoing or had occurred recently.

In the Court of Appeals, Patten argued that the possession of drug paraphernalia charge was a lesser included offense of manufacturing methamphetamine. The Court of Appeals stated:

"Patten contends that under 21-3107(2)(b), possession of drug paraphernalia is a lesser included offense of manufacture of methamphetamine because possession of drug paraphernalia is a necessary element of manufacture of methamphetamine. From the clear language of 21-3107(2), however, the appropriate test is whether *all* elements set forth for possession of drug paraphernalia under K.S.A. 65-4152(a)(3) are identical to *some* of the elements of manufacture of methamphetamine under K.S.A. 65-4159(a).

"The statute which defines the offense of manufacturing a controlled substance, K.S.A. 65-4159(a), provides in part: '[I]t shall be unlawful for any person to manufacture any controlled substance or controlled substance analog.' The statute which defines possession of drug paraphernalia, K.S.A. 65-4152(a)(3), provides that no person shall use or possess with intent to use '(3) any drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, sell or distribute a controlled substance in violation of the uniform controlled substances act.'

"A comparison of these two statutes fails to reveal that all of the elements of possession of drug paraphernalia under K.S.A. 65-4152(a)(3) are identical to some of the elements of manufacture of methamphetamine under K.S.A. 65-4159(a). In order to establish possession of drug paraphernalia under K.S.A. 65-4152(a)(3), the State had to prove that Patten knowingly possessed with the intent to use drug paraphernalia to manufacture, produce, or process a controlled substance. See PIK Crim. 3d 67.17. In order to establish manufacture of methamphetamine, the State was required to prove that Patten intentionally manufactured methamphetamine. See PIK Crim. 3d 67.21. Each of these crimes have different elements and, therefore, it is clear that the legislature did not intend for possession of drug paraphernalia under K.S.A. 65-4152(a) to be a lesser included offense of manufacture of methamphetamine under K.S.A. 65-4159(a)." Slip op. at 15-17.

This court granted defendant's petition for review and ordered the parties to show cause why the judgment of the Court of Appeals

affirming Patten's convictions for possession of drug paraphernalia and manufacture of methamphetamine should not be summarily affirmed in light of this court's decision in *State v. Stevens*, 278 Kan. 441, 101 P.3d 1190 (2004). On February 2, 2005, this court discharged the show cause order, stating: "Upon due consideration of the Show Cause Order and responses, it is the decision of this court that our decision in *Stevens* does not control the issue in the present appeal. Therefore, this appeal is not subject to summary disposition pursuant to Supreme Court Rule 7.041 (2004 Kan. Ct. R. Annot. 49)."

Now before this court, Patten contends that his convictions of manufacture of methamphetamine and possession of drug paraphernalia with intent to manufacture methamphetamine are multiplicitous.

"Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the potential for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights." *State v. Robbins*, 272 Kan. 158, 171, 32 P.3d 171 (2001).

Whether convictions are multiplicitous is a question of law subject to unlimited review. 272 Kan. at 171.

In *State v. Schuette*, 273 Kan. 593, 600-01, 44 P.3d 459 (2002), the court stated that there were two roots of multiplicity, noting:

" 'The concept of multiplicity in Kansas comes from two sources. The first is the traditional "common-law" multiplicity concept. This exists where the State attempts to use a single wrongful act as the basis for multiple charges and is based on the merger of the charges. *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981). This concept has been a part of Kansas law since at least our decision in *State v. Colgate*, 31 Kan. 511, 515, 3 Pac. 346 (1884), wherein we stated: "[U]pon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense." The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not multiplicitous. *Garnes*, 229 Kan. at 373. Offenses also do not merge if they are committed separately and severally at different times and at different places. 229 Kan. at 373.'

"The second source, or layer, of the multiplicity analysis formerly came by statute in K.S.A. 21-3107(2)(d). K.S.A. 21-3107(2)(d) defined an included offense as 'a crime necessarily proved if the crime charged were proved' and stated that a defendant could not be convicted of both the crime charged and the included offense. This statute was amended in 1998, and subsection (2)(d) was eliminated. L. 1998, ch. 185, sec. 1. It was replaced with language defining an included crime as 'a crime where all elements of the lesser crime are identical to some of the elements of the crime charged.' See K.S.A. 2001 Supp. 21-3107(2)(b). The present statutory language in essence mirrors the common-law elements test, thereby leaving it as the only remaining test for multiplicity. See also *State v. Saiz*, 269 Kan. 657, 662-63, 7 P.3d 1214 (2000) (for crimes committed after effective date of 1998 amendment of K.S.A. 21-3107, second prong of *State v. Fike*, 243 Kan. 365, 757 P.2d 724 [1988], disregarded)." 273 Kan. at 600-01.

What remains from the two sources are slight variations in the wording of the tests. The "common-law" elements test is whether each offense charged requires proof of a fact not required in proving the other; if so, the offenses do not merge and are not multiplicitous. *State v. Garnes*, 229 Kan. 368, 373, 624 P.2d 448 (1981); see *State v. Groves*, 278 Kan. 302, 95 P.3d 95 (2004). The other test is "whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous." *Stevens*, 278 Kan. 441, Syl. ¶ 3. Perhaps the tests are the same, but the "common-law" elements test's attention to proof of a fact more strongly suggests consideration of the proof of particular circumstances of a case than does the other test's proof of an element. Hence, the language of the tests broaches some ambiguity as to the nature of the analysis. The question is: Does the test take into account what facts were proved in satisfaction of the elements or is the question of multiplicity strictly limited to the abstract elements of the offenses charged?

Recent decisions of our appellate court reflect a mix of approaches, including examination only of the elements where the test is stated in terms of "proof of a fact" and examination of the proof of a fact where the test is stated in terms of "proof of an element." As an example, the *Schuette* court stated the test in terms of "proof of a fact" and then examined only the elements. 273 Kan. at 601. Schuette argued that his convictions of telephone harass-

ment and criminal threat were multiplicitous. The court rejected his contention, noting:

"Criminal threat is defined in relevant part as 'any threat to . . . [c]ommit violence communicated with intent to terrorize another.' K.S.A. 21-3419(a)(1). Harassment by telephone is, for purposes applicable to this charge, 'use of telephone communication for . . . making a telephone call, whether or not conversation ensues, . . . with intent to abuse, threaten or harass any person at the called number.' K.S.A. 21-4113(a)(2)." 273 Kan. at 601.

The court concluded that "[c]riminal threat requires that the threat be communicated." 273 Kan. at 601.

The *Schuette* court then reasoned:

"Communication is not a required element of harassment by telephone. Harassment by telephone requires using a telephone with the intent to harass, abuse, or threaten the person called. A defendant need not use a telephone in order to be found guilty of criminal threat. In that criminal threat requires proof that the threat was communicated and telephone harassment does not, and telephone harassment requires proof that the telephone was used and criminal threat does not, the two offenses do not merge in the present context." 273 Kan. at 601-02.

The *Schuette* court concluded that the convictions were not multiplicitous.

In *Stevens*, the court stated the test for multiplicity in terms of "proof of an element" and examined the proof of a fact. 278 Kan. at 447. Stevens argued that his convictions of attempted manufacture of methamphetamine and possession of ephedrine or pseudoephedrine were multiplicitous. The court accepted his contention, reasoning:

"The jury was instructed that the elements of attempted manufacture of methamphetamine are: (1) Defendant performed an overt act toward the commission of the crime of manufacture of a controlled substance; (2) he did so with the intent to commit the crime of manufacture of a controlled substance; and (3) he failed to complete commission of the crime of manufacture of a controlled substance. The jury was further instructed that '[a]n overt act necessarily must extend beyond mere preparation made by the accused and must sufficiently approach consummation of the offense to stand either as the first or subsequent step in a direct movement toward the complete offense. Mere preparation is insufficient to constitute an overt act.'

"The bag of ephedrine or pseudoephedrine that was found in Stevens' coat was a powdered substance that had been ground from decongestant tablets. In closing argument, the prosecutor told the jurors that removal of Sudafed pills from their

packaging was the overt act that marked the shift from preparation to the process of manufacturing methamphetamine. . . .

"Whether this court agrees with the prosecutor's characterization of the overt act or not, the jury deliberated the question of Stevens' guilt on that basis. The jury was instructed that, in order to establish the charge of possession of ephedrine or pseudoephedrine, the State had to establish that Stevens knowingly possessed ephedrine or pseudoephedrine with intent to use the product as a precursor to any illegal substance. The jury also was instructed that, in order to establish the charge of attempted manufacture of methamphetamine, the State had to show an overt act toward the manufacture of methamphetamine, done with the intent to manufacture, and failure to complete the manufacture. The prosecutor told the jury that Stevens' possession of ephedrine or pseudoephedrine in the form of ground-up Sudafed was the evidence of an overt act. In other words, in the circumstances of this case, the State's proof of possession of ephedrine or pseudoephedrine with intent to use it to manufacture methamphetamine is the same as its proof of the first two elements of attempted manufacture of methamphetamine. Thus, the possession offense does not require proof of an element not necessary to prove the attempted manufacturing offense. The attempted manufacture and possession charges are multiplicitous in the circumstances of this case." 278 Kan. at 447-48.

In the present case, the Court of Appeals limited its analysis to the bare elements, as this court did in *Schuette*. Using that approach, the jury instruction for the manufacture of methamphetamine charge would require the State to prove that defendant intentionally manufactured methamphetamine. See PIK Crim. 3d 67.21. The jury was instructed that in order to prove possession of drug paraphernalia, the State had to prove that defendant knowingly possessed drug paraphernalia with the intent to use it to manufacture methamphetamine. See PIK Crim. 3d 67.17. Drug paraphernalia was defined for the jury as "all equipment, products and materials of any kind which are used or intended for use in manufacturing, compounding, converting, producing, processing and preparing a controlled substance in violation of the Uniform Controlled Substances Act." The crime of manufacture of methamphetamine requires proof of the manufacture of methamphetamine, which is not required in proving possession of drug paraphernalia. The crime of possession of drug paraphernalia requires proof of possession of drug paraphernalia, which is not required in proving manufacture of methamphetamine.

Patten urges the court to take proof of a fact into account as the court did in *Stevens*. The offense of possession of drug paraphernalia requires proof that Patten had equipment, products, and materials intended for use in manufacturing methamphetamine. The prosecutor explained to the jury that its decision on possession of drug paraphernalia could be based on photographs of containers and chemicals that were found in Patten's trailer. Pictured are containers of Coleman fuel, acetone, muriatic acid, and drain opener, boxes of kitchen matches, a bag of Ice Melt, a box of decongestant caplets, coffee filters, propane containers, an assortment of glass and plastic containers—some with residue in them, glass and plastic containers in the door racks of a refrigerator, and two plastic soda bottles, one with tubing inserted through the cap.

In his testimony explaining how methamphetamine is produced, Detective Frazier identified the above listed items as involved in the process. The offense of manufacturing methamphetamine required proof that defendant intentionally manufactured methamphetamine. The prosecutor informed the jury that more than the possession of household items such as rock salt, acetone, and matches was necessary to establish guilt of manufacturing methamphetamine. He stated to the jury that there also must be evidence of "some process going on." The prosecutor requested that the jury consider Detective Frazier's testimony regarding the presence of anhydrous ammonia and solvent in the trailer's refrigerator, which indicated that there was an ongoing production of methamphetamine in the trailer, and to consider the fact that Frazier had found "lithium and other items going to active production of methamphetamine." Although not mentioned by the prosecutor in closing argument, there was other testimony by Frazier which the jury could have considered in determining that methamphetamine had been produced in the trailer. Frazier had testified that the residue in one of the containers in the trailer appeared to be from the part of the process when the "bindings" were taken off pseudoephedrine pills, the residue in another of the containers appeared to be from the part of the process when lithium, anhydrous ammonia, and ephedrine were combined, the coffee filters smelled

of anhydrous ammonia, and methamphetamine was found in the vehicle Patten was driving.

Here, the State's proof of possession of drug paraphernalia with intent to use it to manufacture methamphetamine also proves in part the manufacture of methamphetamine. The possession offense does not require proof of a fact not necessary, in the circumstances, to prove the manufacturing offense, and all facts proved for possession of drug paraphernalia are identical to some of the facts proved for manufacture of methamphetamine. Using the proof of a fact approach, the possession and manufacture convictions would be multiplicitous in the circumstances of this case.

The approach used by the court in recent multiplicity cases has been determined based on the parties' arguments. It appears in *Schuette* that the multiplicity arguments centered on the elements of defendant's convictions of telephone harassment and criminal threat. See 273 Kan. at 601-02. In *Stevens*, the parties argued facts. In the present case, the State, in its brief and response to the order to show cause, urged the court to strictly apply the elements analysis, while Patten advocates consideration of the facts that proved the elements.

What most recommends the strict elements analysis is its logical, mechanical ease of application and, hence, certainty. Consideration of the facts proved, in contrast, puts multiplicity on a case-by-case basis. We therefore adopt use of the strict elements analysis to determine multiplicity for several reasons: (1) for facility of application and certainty and (2) to avoid any possibility of returning to the difficulties of the second prong of the *Fike* test. The judgment of the Court of Appeals affirming the defendant's convictions and remanding for resentencing is affirmed. The judgment of the district court is affirmed as to the convictions and the case is remanded for resentencing regarding the manufacture of methamphetamine.

LOCKETT, J., Retired, assigned.