(130 P.3d 139)

No. 93,648

STATE OF KANSAS, *Appellee*, v. PETER E. WILSON, *Appellant*.

—

Opinion filed March 17, 2006.

*Sarah Ellen Johnson*, assistant appellate defender, for appellant.

*Ellen Mitchell*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and BUKATY, S.J.

BUKATY, J.: Peter E. Wilson directly appeals his convictions of two counts of forgery and one count of attempted theft by deception. He argues that the district court erred in admitting hearsay

statements, that two of the charges are multiplicitous, and that the district court erred in using his prior convictions to enhance his criminal history score because they were not proven to a jury beyond a reasonable doubt. Finding error in the admission of the hearsay, we reverse and remand for a new trial.

A somewhat detailed recitation of the facts is necessary for an understanding of the issues on appeal.

In relevant part the jury heard the following evidence.

Wilson worked as an over-the-road truck driver. On May 18, 2004, Officer Melissa Short, of the Salina Police Department, received a tip that Wilson might try to cash a fraudulent check at the United Missouri Bank (UMB) at 9 a.m. Short notified both branches of UMB in Salina.

On the same day, Shelly Smith worked as a bank teller at the UMB at Ninth and Magnolia, in Salina. She knew Wilson as a regular customer of the bank. When Smith arrived for work at 8:45 a.m. on May 18, 2004, she saw Wilson standing at the front door of the bank. When she arrived at her teller window, she noticed a note that stated: "Peter Wilson will be coming into the bank maybe, either on foot or driving a motorcycle. With a check that's not probably a good check."

After the bank opened, Wilson came inside and went to Smith's teller window. He ordered some checks and then presented Smith with a check he wanted to deposit and cash. The check appeared to be from Owner Operator Services (OOS) in the amount of $3,096.80. Smith went to her supervisor's office to get approval for the large check. The supervisor called the police and the phone number on the check. During the latter conversation, the supervisor learned that the check was not good and had never been issued to Wilson. The police arrived and Smith gave them the check.

Police arrested Wilson and took him to the police station. Short interviewed Wilson and advised him of his *Miranda* rights, which he waived. Wilson told Short that he was not aware that the check was fraudulent. He stated that he had gotten the check from Darla Slingsby, who lives at the residence where he receives all of his

mail and stores his property while he is on the road. He stated that he believed the check was a reimbursement from OOS.

Following further investigation, it was discovered that OOS is an association that sells truck insurance to over-the-road truck drivers. Wilson had an insurance policy with OOS that was effective February 20, 2004, or about 3 months prior to the incident at the bank. For some reason the policy was cancelled a few days after its effective date. OOS had sent Wilson a refund check in the amount of $198.80 for the premium he had already paid. The refund check bore a check number of 060585. The check was cashed and cleared through OOS's bank on March 29, 2004. OOS had never issued Wilson a check for the amount that was on the check he brought to the UMB and tried to pass. That check, however, bore the same number as the legitimate refund check issued previously by OOS.

During the course of their investigation, Salina police seized Slingsby's computer disks, which contained scanned images of the fraudulent check. They also talked to Slingsby, who gave damaging information against Wilson.

At trial, however, Slingsby did not testify but apparently was in the courthouse at the time. During examination of Short on redirect, the prosecutor asked Short what Slingsby had told her. Wilson lodged an objection on the basis of hearsay, which the court denied. Short then testified that Slingsby told police that Wilson forced her to create the fraudulent check. Later on recross-examination by Wilson's counsel, Short testified that Slingsby told her Wilson intended to create 30 to 50 fraudulent checks and planned to cash them all over Memorial Day weekend.

The jury found Wilson guilty of two counts of forgery and one count of attempted theft by deception. Wilson filed a motion for new trial alleging that the trial court improperly allowed Short to testify about the hearsay statements of Slingsby. The court denied the motion. Wilson appeals raising the hearsay issue, along with the multiplicity issue and the issue of his criminal history score.

*Hearsay*

When the defense cross-examined Officer Short during the State's case in chief, the following exchange took place:

"Q. When you interviewed Mr. Wilson, he indicated to you that he had been given this check by Darla Slingsby?

"A.  He advised that she stated that it came in the mail. For him.

. . . .

"Q. So when he gets back to town he pretty much then does what she directs him to as far as his finances, correct?

"A.  I don't know that that's what he does.

"Q. Well, did the answer he gave you, was it -would it be consistent with that, he was told by Darla, this came in the mail, here, take it to the bank?

"A. I would assume."

On redirect examination, the prosecutor questioned Short as follows:

"Q. Officer Short, did you have any conversations with Ms. Slingsby about the check in Exhibit No. 1?

"[Defense Counsel]: Your honor, now I'm going to object to hearsay.

"[Prosecutor]: Ms. Slingsby is here.

"[Defense Counsel]: She didn't testify.

"THE COURT: You may inquire. Overruled.

"A. Yes, I did have a conversation with her about the check.

"Q. (By [Prosecutor]) Did Ms. Slingsby tell you if she created the check?

"A. Yes, she stated that she did.

"Q. Did she tell you if she created the check of her own accord?

"A. No, she stated that she was threatened and that Mr. Wilson used physical force."

" 'The admission of evidence lies within the sound discretion of the trial court. [Citation omitted.] An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. [Citations omitted.]' " *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004).

This issue also involves interpretation of a statute. The prosecutor argued that the hearsay statements were admissible because Slingsby was present at the courthouse and the district court allowed their admission for that reason. Apparently, the court based the ruling on K.S.A. 60-460(a). "Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation

of a statute. [Citation omitted.]" *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

On appeal, the State does not argue the statements were admissible under K.S.A. 60-460(a). Instead, it urges that Wilson opened the door for admission of Slingsby's hearsay statements because Wilson's counsel was the first to inquire about the statements when questioning Short and that he cannot now complain about their admission constituting error. The State also argues in the alternative that Slingsby's hearsay statements were admissible as a coconspirator's statements made during the course of the conspiracy.

As to the "opening of the door" argument, we note from the excerpt of defense counsel's cross-examination of Officer Short set forth above, that defense counsel never asked Short to testify to any statements told her by Slingsby. Counsel only inquired about what Wilson had told Short. Short did volunteer that Wilson "advised that [Slingsby] stated that it came in the mail. For him." This statement of Slingsby was not solicited by defense counsel, and we fail to see how this amounted to an opening of the door by Wilson to any further hearsay statements of Slingsby. Up to that point, no prejudice had occurred since the statement had little bearing on any issues in the case. The statement provides no justification for the State on redirect to elicit further statements from Short as to what Slingsby said to her.

The State's argument that the statements were admissible as a coconspirator's statements made during a conspiracy also fails. K.S.A. 60-460(i)(2) allows for an exception to the hearsay rule for

"a statement which would be admissible if made by the declarant at the hearing if: . . . the party and the declarant were participating in a plan to commit a crime or a civil wrong and the statement was relevant to the plan or its subject matter and was made while the plan was in existence and before its complete execution or other termination."

Here, Slingsby made the statements at issue to a police officer. Even if Wilson and Slingsby had previously been participating in a plan to commit a crime, any conspiracy had terminated by the time Slingsby talked to the police about it. Therefore, Slingsby's

hearsay statements were not admissible as statements of a coconspirator.

Nor were the statements admissible under K.S.A. 60-460(a), which states:

"Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

"(a) *Previous statements of persons present.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness."

In *State v. Fisher,* 222 Kan. 76, Syl. ¶ 5, 563 P.2d 1012 (1977), the Kansas Supreme Court held that a declarant must testify at trial before hearsay evidence of his or her out-of-court statement may be admitted under K.S.A. 60-460(a). The court later modified *Fisher* in *State v. Davis,* 236 Kan. 538, 541, 694 P.2d 418 (1985), where the court held that if the declarant is actually present and testifies at trial, the statements are admissible whether admitted before or after the declarant testifies. Here, Slingsby, the declarant, was present but was not called to testify either before or after Officer Short testified about statements Slingsby made to her. Therefore, the trial court erred in admitting the hearsay statements under the provisions of K.S.A. 60-460(a).

We note that such an error may be held harmless if the appellate court can declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Boldridge,* 274 Kan. 795, 808, 57 P.3d 8 (2002). Where the evidence of guilt is of such direct and overwhelming nature that it can be said that evidence erroneously admitted or excluded in violation of a constitutional or statutory right could not have affected the result of the trial, such admission or exclusion is harmless. 274 Kan. at 808.

Here, the hearsay statement of Slingsby to Short to the effect that Wilson had threatened and forced her to create the check on her computer was most damaging and contrary to any contention by Wilson that he was unaware the check was forged. While certainly the record contained other evidence of Wilson's guilt besides

this statement, we are unable to conclude beyond a reasonable doubt that the statement did not affect the result of the trial.

We note that after his hearsay objection was denied, Wilson's counsel for some unknown reason chose to solicit further damaging hearsay statements of Slingsby during recross-examination of Short. However, since this testimony did not occur until after the State offered and the court admitted improper hearsay statements, its content should not be considered in evaluating the issue of harmless error. We know of no rule that provides that if the prosecutor commits reversible error on redirect examination, it can be turned into harmless error on cross-examination.

*Multiplicity*

With the remand for new trial, it might be said that the issue of multiplicity is no longer before this court at this time. However, should a new trial result in conviction of Wilson again on the same charges, the issue would again require resolution. In light of that possibility, we will address the issue.

Wilson argues that his convictions on one of the forgery charges and the attempted theft by deception charge are multiplicitous because they are based on the same single act. He failed to raise this issue before the trial court. Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). However, a party may raise a new legal theory for the first time on appeal when necessary to serve the ends of justice and prevent a denial of fundamental rights. *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005). We will address the issue on this basis.

Whether charges are multiplicitous is a question of law, and an appellate court's review is unlimited. *State v. Kessler*, 276 Kan. 202, 204, 73 P.3d 761 (2003).

"The principal danger of multiplicity is that it creates the potential for multiple punishments for a single offense. Multiple punishments for a single offense are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights. [Citations omitted.]" 276 Kan. at 205.

K.S.A. 2003 Supp. 21-3107(2)(a) and (b) state:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

"(a) A lesser degree of the same crime;

"(b) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged."

Wilson was convicted of one count of forgery for violating K.S.A. 2003 Supp. 21-3710(a)(2) and one count of attempted theft by deception for violating K.S.A. 2003 Supp. 21-3701(a)(2) and K.S.A. 21-3301. Wilson argues that his conviction for forgery for delivering the check, (K.S.A. 2003 Supp. 21-3710[a][2]), and his conviction for attempted theft by deception are multiplicitous because they both rely on a single act: presenting the fake check to the bank for cash.

However, under current Kansas law, in determining whether offenses are multiplicitous, the focus is on the statutory elements of each crime without consideration of the facts that must be proven to establish those elements. See *State v. Patten*, 280 Kan. 385, 122 P.3d 350 (2005). The *Patten* court concluded that the offenses of manufacture of methamphetamine and possession of drug paraphernalia were not multiplicitous. The Supreme Court noted that recent appellate decisions in Kansas reflected a mix of approaches between focus on the facts and focus on the statutory elements of offenses when determining multiplicity issues. It also acknowledged that under the facts of the case, proving the manufacturing charge also proved the possession of paraphernalia charge. However, in finding that they were not multiplicitous and in adopting the strict elements test, it stated:

"What most recommends the strict elements analysis is its logical, mechanical ease of application and, hence, certainty. Consideration of the facts proved, in contrast, puts multiplicity in a case-by-case basis. We therefore adopt use of the strict elements analysis to determine multiplicity for several reasons: (1) for facility of application and certainty and (2) to avoid any possibility of returning to the difficulties of the second prong of the *Fike* test." 280 Kan. at 393.

See *State v. Schuette*, 273 Kan. 593, 601, 44 P.3d 459 (2002).

Applying this rationale to the crimes involved here, we conclude they are not multiplicitous.

The conviction for attempted theft by deception under K.S.A. 21-3301 and K.S.A. 2003 Supp. 21-3701(a)(2) required an overt act, an intent to commit the crime of theft by deception, and failure to complete the crime. The elements of the completed crime of theft by deception are: (1) someone other than the defendant owned the property, (2) the defendant obtained control over the property by means of deception, and (3) the defendant intended to permanently deprive the owner of the use or benefit of the property.

In contrast, forgery under K.S.A. 2003 Supp. 21-3710(a)(2) required that the defendant issued or delivered a written instrument which he knew had been made, altered, or endorsed so that it appeared to have been made, altered, or endorsed by someone with authority to do so, when in fact such authority was not given, and that the defendant did this act with the intent to defraud.

We are mindful that this court held in *State v. Perry*, 16 Kan. App. 2d 150, 823 P.2d 804 (1991), that these two offenses were multiplicitous. We did so there, however, based upon the second prong of the multiplicity test set forth in *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988). That test, in turn, found its basis in K.S.A. 21-3107(2)(d), since repealed. Basically, the statute at that time provided that one test for multiplicity was satisfied if one crime was necessarily proved if the other was proved. The statute was amended in 1998, and this language was deleted. We also noted in *Perry*:

"The State is correct that comparing the statutory elements of theft by deception with the statutory elements of forgery by delivery would indicate that forgery by delivery is not an included offense of theft by deception. However, the State fails to apply the second prong of the test as stated in *Fike*." 16 Kan. App. 2d at 155.

In this case, each offense required proof of an element not required in proving the other. The crime of forgery did not require proof that Wilson obtained control over property and that he did so with intent to permanently deprive the owner of the use or benefit thereof. Conversely, the crime of attempted theft by deception did not require proof that Wilson issued, delivered, or altered a written instrument. The fact that one of the crimes may

have necessarily been proven in proving the other is of no moment. With the second prong of *Fike* no longer part of Kansas law as an alternative test, and in light of *Patten*, Wilson's convictions are, therefore, not multiplicitous.

### Criminal History and Prior Convictions

Again, we will address this issue at this time in the event it arises again following a new trial.

Wilson argues the trial court erred in using criminal history to increase his sentence without requiring the criminal history to be proved to a jury beyond a reasonable doubt. He cites *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and *Shepard v. United States*, 544 U.S. 13, 161 L. Ed. 2d 205, 125 S. Ct. 1254 (2005), in support. In his brief, Wilson recognizes that the Kansas Supreme Court rejected his argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2001).

The *Ivory* court held that *Apprendi*, which required a jury to determine any fact that increased the penalty for a crime beyond the statutory maximum, did not apply to defendant's presumptive sentence which was based in part on defendant's criminal history score under the Kansas Sentencing Guidelines Act. 273 Kan. 44, Syl. Wilson's argument on this issue fails.

Affirmed in part, reversed in part, and remanded.

PIERRON, J., concurring in part and dissenting in part: I concur with the majority's opinion on the hearsay question but respectfully dissent on the issue of multiplicity. In this case, based on these facts, I believe one of the forgery counts and the attempted theft by deception count are multiplicitous.

The conviction for attempted theft by deception under K.S.A. 21-3301 and K.S.A. 2003 Supp. 21-3701(a)(2) required an overt act, an intent to commit the crime of theft by deception, and failure to complete the crime. The elements of the completed crime of theft by deception are: Someone other than the defendant owned the property, the defendant obtained control over the property by means of deception, and the defendant intended to permanently deprive the owner of the use or benefit of the property.

Under K.S.A. 2003 Supp. 21-3710(a)(2), forgery requires that the defendant issued or delivered a written instrument which he knew had been made, altered, or endorsed so that it appeared to have been made, altered, or endorsed by someone with authority to do so, when in fact such authority was not given, and the defendant did this act with the intent to defraud.

The issue of multiplicity has produced a veritable forest of opinions. The reason is obvious. On the one hand it is not lawful to make a single act into two or more crimes. On the other hand, a stream of events, closely related in time and place, may generate more than one criminal act. It is sometimes difficult to differentiate the two situations. The two countervailing concerns have generated much reported analysis. There is a consistent, logical, common-sense thread in the decisions. Although the dicta in certain decisions seems to counsel a complete disregard for the facts of the case and point to reliance on the elements alone, other cases note the importance of certain facts in particular circumstances notwithstanding the elements test.

A few examples are illustrative. In *State v. Patten*, 280 Kan. 385, Syl. ¶ 4, 122 P.3d 350 (2005),the court stated: "The test for multiplicity is the strict elements test without considering the facts that must be proven to establish those elements."

Patten was convicted of manufacture of methamphetamine, possession of methamphetamine, felony possession of drug paraphernalia, and possession of marijuana. His appeal dealt with whether the possession of drug paraphernalia and manufacture of methamphetamine were multiplicitous. The court said no, using the elements test. However, one can have possession of paraphernalia and not engage in manufacture, although one probably cannot manufacture without possession of paraphernalia. To manufacture, additional acts must occur beyond the simple possession of the means to do so. In *Patten*, the elements of the two crimes were different and the facts necessary to convict on both charges were not identical.

In *State v. Groves*, 278 Kan. 302, 95 P.3d 95 (2003), the court dealt with a conceptually similar situation to the instant case. Groves grabbed a woman's purse from her. She was thrown to the

ground during the struggle, suffering a fractured sacrum. The question was whether the aggravated battery and aggravated robbery convictions which followed were multiplicitous because they arose out of the same act of violence.

Looking to *Patten* very literally, one might say that although the acts involved occurred at the same time, the elements of the two crimes are obviously different and there is no multiplicity. However, the *Groves* court noted its adherence to the "single act of violence" rule which did not allow the generation of more than one criminal charge from only one act. The act of violence in *Groves* was the central act perpetrated to commit the aggravated robbery and could not be the basis for another criminal act as well.

*Groves* was distinguishable from *Patten*, even though the charges in *Groves*, as in *Patten*, had elements that were clearly different.

In the instant case, we have a situation very close conceptually to *Groves*. The single act in Wilson's crime was the presentation of the forged check with the intent to wrongfully receive money. I believe that this single act, although not "violent," cannot form the basis for both the forgery and the attempted theft by deception. Therefore, we should reverse the conviction for attempted theft by deception. We should find, under the facts of this case, that where a single act underlying both charges occurs in one physical motion, charges for forgery and attempted theft by deception are multiplicitous.