No. 93,670

STATE OF KANSAS, *Appellee*, v. NICHOLAS MCKISSACK, *Appellant*.

(156 P.3d 1249)

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 10, 2006.

Opinion filed April 27, 2007.

*Carl A. Folsom, III*, of Kansas Appellate Defender Office, argued the cause, and *Nathan B. Webb*, of the same office, was on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Nicholas McKissack forcibly entered his estranged girlfriend's car and removed stereo equipment and compact discs that had been given to her by her ex-fiancé. He was charged with burglary and misdemeanor theft. A jury convicted him of burglary and criminal deprivation of property, based upon instructions from the trial court that criminal deprivation of property was a lesser

included offense of theft. The Court of Appeals affirmed in *State v. McKissack*, Case No. 93,670, an unpublished opinion filed March 10, 2006. We granted McKissack's petition for review to consider three questions: (1) whether criminal deprivation of property is a lesser included offense of theft; (2) the sufficiency of evidence to establish burglary; and (3) the admissibility of hearsay evidence.

**Facts**

In April 2004, Nicholas McKissack forcibly entered the automobile of his estranged girlfriend Megan Bushell, in order to remove stereo equipment and compact discs that he knew were given her by her ex-fiancé. Earlier that evening, McKissack had been in Bushell's dorm room and had witnessed an online conversation between Bushell and her ex-fiancé, where the ex-fiancé informed Bushell that he still loved her and wished to resume their relationship. McKissack left Bushell's dorm room feeling hurt and "enraged"; he later text-messaged her that he wanted to break off their relationship.

An eyewitness testified at trial that she observed McKissack and another person approach Bushell's Dodge Neon in a white Ford Probe (whose license plate number she identified) with the headlights out. She explained that McKissack got out of the Probe and, wearing gloves, removed stereo equipment from the Neon and placed it in the Probe. After the Probe drove off, the witness contacted the police and reported the license plate number, which led the police to McKissack's residence.

A short time later, the police arrived at McKissack's residence, where McKissack opened the door. McKissack assisted the police in recovering the missing property and admitted to taking it. However, he explained that he had removed the property as a prank and intended to return it to Bushell.

The State originally charged McKissack with burglary and felony theft; the information later replaced the felony theft charge with a reduced charge of misdemeanor theft.

McKissack testified at trial that he returned to the parking lot where Bushell's car was parked on April 7 because he wanted

"[r]evenge, prank, make—to make her feel emotionally hurt as I was." He used a screwdriver to pop out the passenger window of her Dodge Neon, reached in, and unlocked the door. McKissack explained that he knew how to do this because he had previously owned a Neon. He stated that he wore gloves in order to be "discreet." He then removed a box of CDs from inside the car and the speakers and amplifier from the trunk.

McKissack also identified the man driving the Probe that evening as "Guido." On cross-examination by the State, McKissack acknowledged that he had told the police that Guido had informed him that another man named "Dino" wanted Bushell's amplifier. This exchange was admitted over McKissack's counsel's objection, who argued outside the presence of the jury that the statement by Dino was double hearsay and impermissibly offered to prove the truth of the matter asserted—that "somebody had a conversation with somebody else about wanting this amp removed from the vehicle, and that's the fact in evidence [the State] want[s] to get in." The State claimed that "we're not offering [the statement] to prove whether or not Guido—or Dino told Guido to take the amps out. We're just saying that this is what the defendant told the officers that night when they were questioning him about the incident." The statement was admitted.

Also over the defense's objection, the trial court instructed the jury that criminal deprivation of property is a lesser included offense of misdemeanor theft. McKissack argued that criminal deprivation of property could not be considered a lesser included offense of theft because criminal deprivation of property only involves an intent to temporarily deprive someone's property, while theft involves an intent to permanently deprive. The State asserted that the intent to temporarily deprive is a "lesser intent" of the intent to permanently deprive. The court agreed with the State and overruled the objection, explaining that "[t]he intent to permanently deprive would include intent to temporarily deprive, so I think the lesser included [offense instruction] is proper."

During deliberations, the jury submitted the following question to the court: "Can we find defendant guilty of burglary and not guilty of theft but guilty of criminal deprivation of property?" The

court answered that "[t]he jury is instructed to review Instructions No. 5, 6, 7, 8, and 11. Your verdict must be founded on the evidence presented." The jury subsequently found McKissack guilty of burglary and criminal deprivation of property.

*Court of Appeals*

The Court of Appeals affirmed, holding (1) that criminal deprivation of property is a lesser included offense of theft based upon our decision in *State v. Keeler*, 238 Kan. 356, Syl. ¶ 8, 710 P.2d 1279 (1985), Slip op. at 6-10; (2) that an insufficiency of the evidence claim cannot be upheld merely on the basis of inconsistent verdicts, Slip op. at 10-14; and (3) that the admission of Dino's statement was not hearsay evidence offered to establish the truth of the statement but rather was offered to show defendant's state of mind, Slip op. at 15-16.

## (1) Is Criminal Deprivation a Lesser Included Offense of Theft?

*Standard of Review*

The question of whether criminal deprivation of property is a lesser included offense of theft is a purely legal question over which this court has unlimited review. See *State v. Sandifer*, 270 Kan. 591, 599, 17 P.3d 921 (2001).

*Discussion and Analysis*

The precise question raised by defendant has been answered by this court in *Keeler*, 238 Kan. 356. At that time this court held that the crime of unlawful deprivation of property under K.S.A. 21-3705 (Ensley 1981) was a lesser included offense of the crime of theft under K.S.A. 1984 Supp. 21-3701.

Prior to our decision in *Keeler*, the question of whether an unlawful (now criminal) deprivation of property was a lesser included offense of theft was a source of some tension in the Supreme Court (see *Keeler*, 238 Kan at 364-65) as well as the Court of Appeals. In *State v. Burnett*, 4 Kan. App. 2d 412, 607 P.2d 88 (1980), *overruled* in *Keeler*, Burnett was charged with theft of bank deposits and complained on appeal that he was entitled to an instruction on the

lesser included offense of unlawful deprivation of property. The Court of Appeals concluded in *Burnett* that unlawful deprivation of property was not a lesser included offense in that "an intent to temporarily deprive the owner of property is a distinct element from an intent to permanently deprive." 4 Kan. App. 2d at 418. In a dissenting opinion, adopted in *Keeler*, then Chief Judge Abbott opined that "unlawful deprivation of property and theft involve a different degree of intent; *i.e.*, the intent to temporarily deprive versus the intent to permanently deprive. Thus, there is not a different element involved in unlawful deprivation. All of the essential elements are the same." 4 Kan. App. 2d at 419 (Abbott, J., dissenting).

Although in this case the Court of Appeals followed our decision in *Keeler*, its opinion highlights the continuing tension between these opposing views in the following quote:

"We confess to some difficulty in grasping portions of the *Keeler* rationale. One would suspect that a person who steals for a living would commence each enterprise with the intent to permanently deprive the property owner, without progressing through an interim intent to temporarily deprive. Conversely, some unauthorized 'borrowers' always intend to return the property to its owner, as McKissack contended was his plan. Further, as McKissack points out, the criminal deprivation of property statute specifically differentiates and excludes an intent to permanently deprive, which might suggest a legislative intent to create a separate intent element, rather than differing degrees of the general intent to deprive." Slip op. at 7.

The opinion of the Court of Appeals signals the need for this court to revisit the question in light of statutory and case law changes that have occurred since our 1985 *Keeler* decision.

## Statutory Changes

The lesser included crime statute in effect at the time of the *Keeler* opinion read, in relevant part, as follows:

"(1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(a) A lesser degree of the same crime;

(b) an attempt to. commit the crime charged;

(c) an attempt to commit a lesser degree of the crime charged; or

(d) *a crime necessarily proved if the crime charged were proved."* (Emphasis added.) K.S.A. 1984 Supp. 21-3107(1), (2).

In 1998, the above statute was amended and now provides:

"(1) When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

(a) A lesser degree of the same crime;

(b) *a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;*

(c) an attempt to commit the crime charged; or

(d) an attempt to commit a crime defined under subsection (2)(a) or (2)(b)." (Emphasis added.) K.S.A. 2006 Supp. 21-3107(1), (2).

For our purpose, let us consider only the sections of the statutes which have been italicized above. At the time of *Keeler,* a lesser included crime was one necessarily proved if the crime charged was proved. Under the 1998 amendment governing this case, a lesser included offense is one where all elements of the lesser crime are identical to some of the elements of the crime charged. The essential difference between these two tests is that the common-law test in existence at the time of the *Keeler* decision "take[s] into account what facts were proved in satisfaction of the elements" and the strict elements test presently in existence "strictly" limits "the question . . . to the abstract elements of the offenses charged." See *State v. Patten,* 280 Kan. 385, 389, 122 P.3d 350 (2005) (discussing the current strict elements test in the context of multiplicity).

The approach prior to the 1998 amendment was primarily a factual one involving a determination of what facts were proved in satisfaction of the elements. Since intent was a shared element

between the two offenses in question and the inquiry was determined by proof of facts, it made some sense to view intent as a dynamic, proof-driven concept separated only by degrees. See *Keeler*, 238 Kan. at 364-65. This was so even though the statutory definitions at that time pertaining to theft and unlawful deprivation of property seemed to provide otherwise. K.S.A. 1984 Supp. 21-3701(a)(1) defined theft as "[o]btaining or exerting unauthorized control over property" "with *intent to deprive the owner permanently of the possession, use or benefit of the owner's property.*" (Emphasis added.) K.S.A. 21-3705(a) (Ensley 1981) defined unlawful deprivation of property (the predecessor to criminal deprivation of property) as "obtaining or exerting unauthorized control over property, *with intent to deprive the owner of the temporary use thereof, without the owner's consent but not with the intent of depriving the owner permanently of the possession, use or benefit of his property.*" (Emphasis added.) The language of these definitions remains virtually unchanged in the current statutes. See K.S.A. 2006 Supp. 21-3701(a)(1); K.S.A. 2006 Supp. 21-3705(a).

However, with the 1998 amendment defining a lesser included offense as a crime where all elements of the lesser crime are identical to some of the elements of the crime charged, it no longer makes sense to consider intent as a fluid concept progressively changing by degrees based on facts proved at trial. See L. 1998, ch. 185, sec. 1. As discussed above, the present law limits our inquiry to the strict elements of the crimes. While the key element separating the two offenses still involves intent, the intent in each crime is differentiated by the use of the word "permanently" in the case of theft and "temporarily" in the case of criminal deprivation. These separate elements are not dynamic, but rather are fixed, independent of the facts proven. The difference between the two separate elements of each crime demonstrates that criminal deprivation of property is a separate offense and not a lesser included offense of theft.

The above conclusion is supported by our consideration of the strict elements test in K.S.A. 2006 Supp. 21-3107(2)(b) and the definition of criminal deprivation of property as an intent to deprive the owner of the temporary enjoyment of his or her property

*"but not with the intent of depriving the owner permanently of the possession, use or benefit of such owner's property."* (Emphasis added.) K.S.A. 2006 Supp. 21-3705(a). The definition of theft includes the very words that are excluded in the definition of criminal deprivation: *"[W]ith [the] intent to deprive the owner permanently of the possession, use or benefit of the owner's property."* (Emphasis added.) K.S.A. 2006 Supp. 21-3701(a)(1). The strict elements test adopted in 1998 by the legislature no longer supports the conclusion that criminal deprivation of property is a lesser included offense of theft.

*Case Law Changes*

Intricately involved with and just as important to our conclusion are the recent decisions of this court in *State v. Garcia*, 272 Kan. 140, 32 P.3d 188 (2001), and *Patten*, 280 Kan. 385. Both cases deal with the question of multiplicity and lesser included offenses. Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense. Such punishments are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. See *State v. Schuette*, 273 Kan. 593, 600, 44 P.3d 459 (2002).

Both K.S.A. 1984 Supp. 21-3107(2) (in effect at the time of *Keeler*) and K.S.A. 2006 Supp. 21-3107(2) address the question of multiplicity by providing that separate offenses may be charged in separate counts but upon prosecutions for a crime, "the defendant may be convicted of either the crime charged or a lesser included crime, but not both." *Garcia* dealt with multiplicity under K.S.A. 21-3107, which contains language identical to the statute in effect at the time of *Keeler*. However, it addressed the 1998 amended version of the statute, foreshadowing our recent decision in *Patten*:

"It should be noted that in 1998, the Kansas Legislature amended K.S.A. 21-3107 to essentially remove the former K.S.A. 21-3107(2)(d). See L. 1998, ch. 185, § 1. In its place, the legislature inserted a new version, K.S.A. 2000 Supp. 21-3107(2)(b), which provides that an included crime is one where 'all of the elements of the lesser crime are identical to some of the elements of the crime charged.'

*This will necessarily change the multiplicity analysis for cases which occur under the new statute* and signifies a return to the identity of the elements standard that this court used prior to the enactment of K.S.A. 21-3107. Such a change, while allowing convictions for crimes which would have been multiplicitous under the statute at issue here, does not violate constitutional prohibitions against double jeopardy as it does not subject defendants to punishments greater than those intended by the legislature. [Citation omitted.]" (Emphasis added.) *Garcia,* 272 Kan. at 147.

In *Patten,* where this court considered whether possession of drug paraphernalia was a lesser included offense of the crime of manufacture of methamphetamine, the court explained in detail the differences between the common-law test, which had been used by this court in *Keeler,* and the strict elements test. The " 'common-law' elements test" questioned whether "each offense charged requires proof of a fact not required in proving the other." *Patten,* 280 Kan. at 389. If this were the case, the two crimes were not multiplicitous (and one could not be a lesser included offense of the other). The other test, now known as the strict elements test, asks " 'whether each offense requires proof of an element not necessary to prove the other offense. If so, the charges stemming from a single act are not multiplicitous.' " 280 Kan. at 389 (quoting *State v. Stevens,* 278 Kan. 441, Syl. ¶ 3, 101 P.3d 1190 [2004]). *Patten* explained that the essential difference between these two tests is that the common-law test "take[s] into account what facts were proved in satisfaction of the elements" and the strict elements test "strictly" limits "the question of multiplicity . . . to the abstract elements of the offenses charged." 280 Kan. at 389.

Acknowledging the distinctions between these two tests, this court explicitly adopted the strict elements test to determine whether convictions were multiplicitous. The *Patten* court explained that its decision was particularly influenced by the strict elements analysis' "logical, mechanical ease of application and, hence, certainty. Consideration of the facts proved, in contrast, puts multiplicity on a case-by-case basis." 280 Kan. at 393. Applying the strict elements analysis, the court found that convictions for possession of drug paraphernalia and manufacture of methamphetamine did not violate double jeopardy, even though such

crimes would have been found multiplicitous under the common-law test. See 280 Kan. at 393.

In affirming the trial court in this case, the Court of Appeals expressed some doubt that we would overturn *Keeler*, but its discussion of our decision in *Patten* is worth noting:

"*Patten* adopted a strict elements test, comparing the statutory language of the two crimes to determine whether one requires proof of an element not required by the statutory language defining the other crime. 280 Kan. at 393. . . . Here, criminal deprivation of property requires proof that the property was taken 'with intent to deprive the owner of the temporary use thereof,' but that intent is not an element of theft. Conversely, theft requires an intent to permanently deprive the owner of the possession, use, or benefit of the property, while the definition of criminal deprivation specifically excludes the intent to permanently deprive. Thus, under *Patten's* strict elements test, a conviction for both criminal deprivation of property and theft would not have been multiplicitous. However, under *Keeler*, criminal deprivation of property is a lesser included offense of theft, and a person may not be convicted of both the charged crime and the lesser included offense." Slip op. at 9.

The above reasoning provides yet another example why we depart from our previous decision in *Keeler*. We now hold that the crime of criminal deprivation of property is not a lesser included offense of theft, and we overrule that part of the *Keeler* decision concluding otherwise. We further conclude that the trial court erred when it provided the jury with an instruction on criminal deprivation of property, which was neither a lesser included offense nor charged in the complaint or information.

Moreover, because the complaint and information in this case failed to charge McKissack with criminal deprivation of property, the district court lacked jurisdiction to convict the defendant of that crime. As we stated in *State v. Belcher*, 269 Kan. 2, 8, 4 P.3d 1137 (2000): " '[I]f a crime is not specifically stated in the information or is not a lesser included offense of the crime charged, the district court lacks jurisdiction to convict a defendant of the crime, regardless of the evidence presented.' [Citation omitted.]" A judgment for an offense where the court is without jurisdiction is void. 269 Kan. at 8.

We therefore reverse defendant's conviction for criminal deprivation of property.

## (2) **Sufficiency of Evidence to Establish Burglary**

As his next contention, McKissack argues that because the jury returned a verdict of guilty on criminal deprivation of property and not on theft, there was insufficient evidence before the jury to find him guilty of burglary (which requires an intent to commit a theft). Thus, he argues that he should be acquitted of the burglary charge.

We note as a preliminary matter that the defendant's contention is not an argument that directly attacks the sufficiency of evidence to establish his burglary conviction. If that were the case, as the following discussion indicates, his contention would be rejected. Instead, we understand his argument to be that because the jury was improperly instructed that criminal deprivation of property is a lesser included offense of theft, the jury's subsequent conviction of the defendant of criminal deprivation and acquittal of the defendant of theft undermines the validity of the defendant's burglary conviction.

### *Standard of Review*

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005).

Furthermore, this court has held that when a defendant challenges his or her verdict on the basis of the jury instructions provided and the defendant objected to the jury instructions below, our court is required to consider the instructions as a whole and not isolate any one instruction. Even if erroneous in some way, instructions are not reversible error if they properly and fairly state the law as applied to the facts of the case and could not have reasonably misled the jury. *State v. Edgar*, 281 Kan. 47, 54, 127 P.3d 1016 (2006).

### *Discussion and Analysis*

Burglary is defined by statute as "knowingly and without authority entering into or remaining within any . . . motor vehicle . . . with intent to commit a felony, theft or sexual battery

therein." K.S.A. 21-3715(c). Similarly, the instruction presented to the jury on burglary in this case was that, in order to find the defendant guilty of burglary, the State was required to prove beyond a reasonable doubt that (1) "the defendant knowingly entered a motor vehicle"; (2) "the defendant did so without authority"; and (3) "the defendant did so with the intent to commit a theft therein."

McKissack correctly asserts that misdemeanor criminal deprivation of property is neither a theft nor a felony, and his conviction of criminal deprivation therefore does not support his conviction of burglary. Compare K.S.A. 2006 Supp. 21-3705(a) (criminal deprivation of property) with K.S.A. 2006 Supp. 21-3701 (theft). Not only does the charge not support a burglary, but also we have set aside his criminal deprivation of property charge.

His argument has a certain common-sense appeal. The jury verdicts do seem inconsistent, in that the jury apparently found that the defendant did not possess the requisite specific intent to be convicted of theft (the intent to permanently deprive Bushell of her property) but nonetheless did possess this intent for purposes of the burglary charge. His argument raises the issue of inconsistent verdicts and whether such inconsistency warrants the relief requested.

This question is one of law. As this court has previously explained, "[t]he conduct of a jury is sometimes devoid of logic, and inconsistent verdicts may result. Even in cases where the two verdicts are irreconcilable the convictions will not be reversed on grounds of inconsistency." *State v. Shultz*, 225 Kan. 135, Syl. ¶ 8, 587 P.2d 901 (1978).

This rule for upholding inconsistent verdicts is bolstered by the fact that the jury in this case was provided the following instruction:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your findings as to each crime charged must be stated in a verdict form signed by the Presiding Juror."

Because juries are presumed to have followed the instructions given, one must assume that they understood that their verdicts

were independent of one another. See *State v. Donaldson*, 279 Kan. 694, 700, 112 P.3d 99 (2005).

However, under the facts unique to this case, the above assumption is somewhat undermined. During its deliberations, the jury posed the following question to the trial court: "Can we find defendant guilty of burglary and not guilty of theft but guilty of criminal deprivation of property?" The court answered that "[t]he jury is instructed to review Instructions No. 5, 6, 7, 8, and 11. Your verdict must be founded on the evidence presented."

None of the instructions to which the court referred directly answered the question posed by the jury. On the one hand, the trial court's instruction on burglary was correct and included only theft as a predicate for burglary. On the other hand, the instructions as a whole erroneously advised the jury that criminal deprivation of property was a lesser included offense of theft. As one can readily see, the jury did exactly what its question asked—convict the defendant of criminal deprivation of property and burglary.

The general rule in favor of upholding inconsistent verdicts is premised on the understanding that the jury is properly instructed as to the legal principles that should be applied in deciding a case. In this case, the court incorrectly instructed the jury over the defendant's objection that criminal deprivation of property was a lesser included offense of theft. We conclude the jury was misled by the court's erroneous instruction, particularly in light of the jury's question to the court during its deliberations. See *Edgar*, 281 Kan. at 54. Thus, we have no confidence in the jury's verdict.

Under these unique circumstances, there is a real possibility that the jury based its conviction of burglary not on other evidence produced at trial but rather upon defendant's conviction of criminal deprivation of property. We therefore reverse defendant's burglary conviction, not on the basis of inconsistent verdicts or sufficiency of evidence, but rather on the basis that we have no confidence in the guilty verdict rendered in light of the jury's question to the trial court during its deliberations and the erroneous instructions by the trial court.

### (3) **Admissibility of Hearsay Evidence**

Both the trial court and the Court of Appeals concluded that the defendant's statement to the police at issue here—that Dino told Guido (who subsequently told defendant) that Dino wanted Bushell's amplifier—was not offered to prove the truth of the matter stated and, therefore, was not hearsay and was admissible.

*Standard of Review*

This court generally reviews a trial court's admission of evidence under an " 'abuse of discretion' " standard. *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004) (quoting *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 [2002]); see *State v. Sanders*, 258 Kan. 409, 421, 904 P.2d 951 (1995). However, as this court has recently explained, " ' "[t]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." ' *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005) (quoting *Koon v. United States*, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 116 S. Ct. 2035 [1996])." *State v. Davis*, 282 Kan. 666, 672, 148 P.3d 510 (2006).

*Discussion and Analysis*

At trial, the court admitted the statement in question—that Dino told Guido (who subsequently told McKissack) that Dino wanted Bushell's amplifier—over McKissack's objection. The following exchange took place between the prosecution and McKissack during the defendant's cross-examination:

"Q. Did you make a statement [when talking to a police officer about the incident] in reference to a guy named Dino?
"A. I had made a comment of Dino to him [police officer].
"Q. And who was Dino?
"A. He's an ex-friend of mine.
"Q. Did you make the statement that Dino had wanted—that Dino had told— that Guido had told you that another man by the street name of Dino had mentioned to Guido that he wanted the amp removed?
"A. Yes, I had told the officer that."

In this case we deal with a statement made by the defendant during an investigation of theft and burglary within a very short

time after the taking of the property. Whether the statement given to the officers by the defendant was true was not the issue before the trial judge court. The key issues before the trial court and the basis of its ruling was that it was a statement by the defendant to the police on the evening in question. In its ruling, the trial judge explained:

"I think the fact in evidence they [the State] want to get in is that *it's a separate statement he* [the defendant] *made* to the police other than I did this as a prank, and I think that's the purpose for which it's intended. And I think it's permissible *to show that he had some other motive in talking to the police other than being open and frank.*" (Emphasis added.)

The trial court found that the statement was not offered to prove the truth of the matter but instead was evidence of the defendant's motive in talking with the police.

K.S.A. 2006 Supp. 60-460 defines hearsay as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." Such evidence is inadmissible, unless it falls under a recognized exception. K.S.A. 2006 Supp. 60-460. This court has explained that "[t]he theory behind the hearsay rule is that when a statement is offered as evidence of the truth asserted in it, the credibility of the asserter is the basis for the inference, and therefore the asserter must be subject to cross-examination. 6 Wigmore on Evidence § 1766 (Chadbourn rev. 1976)." *State v. Harris,* 259 Kan. 689, 698, 915 P.2d 758 (1996). However, if an out-of-court statement is offered "merely for the purpose of establishing what was then said, and not for the purpose of establishing the truth of the statement, the statement is not hearsay. If relevant, it is admissible through the person who heard it. [Citation omitted.]" *State v. Vontress,* 266 Kan. 248, 253, 970 P.2d 42 (1998).

The defendant contends that the statement he made to police was offered as hearsay to prove the truth of the matter stated. This court considered the scope of the hearsay rule and the " 'truth of the matter stated' " language in *Harris,* 259 Kan. at 698. In that case, Harris was charged with first-degree murder and aggravated battery of a law enforcement officer, in connection with an event that took place at Leavenworth Correctional Facility, where Harris

was an inmate. At trial, another inmate at the facility testified for the State over Harris' objection. The witness testified that both he and Harris were present during a conversation between two members of the Vice Lords gang (of which the defendant was also a member) that the prison guards were " 'cracking down' on the Vice Lords." 259 Kan. at 694. The gang members also discussed " 'getting even' with the guards." 259 Kan. at 694.

Harris' counsel objected at trial to the admission of this testimony on grounds that it was hearsay and that there was no evidence that the statements were made by Harris or that he shared these views. The trial court overruled the objection because it found the witness' "anticipated statements were not offered to prove the truth of the matter asserted but merely offered to show that they had been said." 259 Kan. at 694.

This court, however, disagreed with the trial court's assessment of the testimony and ruled that the statements in question were indeed hearsay. 259 Kan. at 698-700. The *Harris* court distinguished the statements it considered there from "the usual case in which statements which would otherwise be hearsay are offered, not to prove the truth of the matter asserted, but merely to show that the statements were said." 259 Kan. at 699. The court elaborated:

"We have allowed the use of statements which would otherwise be hearsay to show that the defendant's story had changed over time, to show the defendant's state of mind, or to show that a *Miranda* warning was given. [Citations omitted.] However in this case, the statements were offered by the State as evidence of premeditation on the part of the defendant, *and the content of the statements themselves reflect such premeditation.*

"In *State v. Oliphant*, 210 Kan. 451, 454, 502 P.2d 626 (1972), we identified three types of statements exempted from the hearsay rule when offered, not for the truth of the matter asserted, but without reference to such a truth. These three groups are: (1) those statements material to the case as part of the issue; (2) those statements which are verbal parts of an act; and (3) those statement used circumstantially as giving rise to an indirect inference but not as an assertion to prove the matter asserted. The State argues that the statements made in this case fall under the third categorization used in *Oliphant*. According to the State, the evidence was used indirectly to infer premeditation on the part of the defendant.

"However, the only way in which the evidence can be used to infer premeditation on the part of the defendant is if the statements asserted were true, *i.e.*, if

the guards were actually cracking down on the Vice Lords and the Vice Lords felt that they should get even. . . .

" . . . The fact that the defendant merely heard these statements does not infer premeditation. Instead, the probative value of the statements is that they allow a jury to infer that the Vice Lords were angry and wanted to get even, thus providing a motive and evidence of premeditation. *If not to show the truth of the matter asserted, there was no other reason for the State to offer the statements.* Under these circumstances the statements were hearsay." (Emphasis added.) *Harris*, 259 Kan. at 699-700.

We note that there is a marked difference between *Harris* and this case. This case involves a statement made to police *by the defendant*, whereas *Harris* involved a statement made by another inmate attributing complicity to the defendant. What it important in this case is that McKissack voluntarily supplied certain information to the officers—information that he had the opportunity to explain to the jury during his testimony. Whether the information was true was unimportant, and the defendant's statement to the police was not offered to prove the truth of the information. Instead, the statement was offered to demonstrate that the defendant's state of mind in providing this information to the police. The statement of the defendant is therefore more appropriately governed by the third category in *Oliphant*, as a statement used circumstantially giving rise to an indirect inference but not as an assertion to prove the matter asserted. See 210 Kan. at 454. We agree with the decision of the trial court and the Court of Appeals.

**Conclusion**

The decision of the district court is reversed. We reverse in part and affirm in part the Court of Appeals' decision. The defendant has been acquitted of theft. His criminal deprivation of property conviction is reversed, but he may be charged for this offense unless such a charge is barred by the statute of limitations or some other procedural barrier. His burglary conviction is reversed, and the case is remanded.

Reversed and remanded.

JOHNSON, J., not participating.

BRAZIL, S.J., assigned.