NOT DESIGNATED FOR PUBLICATION

No. 113,622

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH MURRAY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed February 10, 2017. Affirmed.

*Randall L. Hodgkinson*, and *Brandon J. Katt*, legal intern, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., ARNOLD-BURGER and BRUNS, JJ.

*Per Curiam*: Kenneth Murray appeals from his conviction of felony theft, raising numerous trial and sentencing errors. Murray argues the district court erred by admitting an exhibit into evidence and by failing to instruct the jury on criminal deprivation of property as a lesser included offense of theft. He also claims that the cumulative effect of these errors deprived him of his right to a fair trial. In addition, Murray argues the district court erred in imposing his sentence, raising several issues challenging the court's reliance on his nonamenability to probation as an aggravating factor justifying an upward

1

durational departure sentence and alleging the court erred by classifying a prior robbery conviction as a person felony.

FACTS

On October 4, 2013, Overland Park Home Depot store associate Dexter Goode observed Murray pushing a shopping cart filled with merchandise toward the entryway of the store and through the alarm system to the vestibule area where the carts were kept. Goode was familiar with Murray and believed that Murray had not paid for the items in his cart. Goode took the cart and directed it toward the returns desk. Murray grabbed the cart and pushed it back inside the store.

Once inside, Murray approached the customer service desk and attempted to return the merchandise, which included multiple faucets. Goode contacted Nathan McAleese, the store operations manager, to handle the situation. Murray told McAleese that he wanted to return the faucets because he did not need them. McAleese responded that he could not accept the merchandise without a receipt or other proof of purchase. Murray began cursing and yelling, claiming that the store associates were discriminating against him. Murray then left the store, taking the faucets with him.

The State charged Murray with one count of felony theft. At trial, the State presented video evidence of Murray entering the store on October 4, 2013, at approximately 1:22 p.m. with nothing in his hands and leaving the store at approximately 1:41 p.m. pushing a shopping cart full of merchandise. The State also presented evidence that there had been no faucet sales in the store between 1:20 p.m. and 1:41 p.m. that day.

Murray presented testimony from Rand Russon, who testified that he drove Murray to Home Depot to exchange a faucet. According to Russon, Murray asked him to return the faucet because Murray's identification had been stolen. Russon stated that he

2

carried the faucet into the store, entering through a different entrance than Murray. Russon claimed that he was unable to return the faucet because he did not have the proper identification, so he brought the faucet to Murray, who put it in the shopping cart. Russon stated that he went back to his car and Murray followed soon after with the faucet. On cross-examination, Russon admitted that he never gave a statement to the police or anyone else detailing this version of events.

The jury found Murray guilty as charged. At a separate sentencing departure proceeding, the State alleged that an increased sentence was warranted based on the aggravating factor of Murray's nonamenability to probation. After hearing evidence, the jury found the State had established the aggravating factor beyond a reasonable doubt. Based on the jury's finding, the district court doubled the presumptive aggravated grid sentence and sentenced Murray to 26 months in prison, with a postrelease supervision term of 12 months. Murray timely appeals.

ANALYSIS

Murray raises the following issues on appeal: (1) The district court erred by admitting an exhibit into evidence, (2) the district court erred by failing to instruct the jury on criminal deprivation of property as a lesser included offense of theft, (3) cumulative error deprived him of his right to a fair trial, (4) the district court erred by relying on nonamenability to probation as an aggravating factor justifying an upward durational departure sentence, and (5) the district court erred by classifying a prior robbery conviction as a person felony and using it to calculate his criminal history score. Each of these allegations is addressed in turn.

1. *Sales report*

Murray argues the district court erred by admitting into evidence a Home Depot sales report which showed that no faucet sales took place in the store on October 4, 2013, during the time that Murray was there. Murray argues that (a) the State's failure to disclose the report until the day before trial violated its duty to provide discovery under K.S.A. 2015 Supp. 22-3212 and (b) the report was not otherwise admissible under the business records exception to hearsay evidence.

A discussion of some additional facts is warranted to place Murray's arguments in context. The jury trial began on Monday, December 1, 2014. Outside of the jury's presence, defense counsel advised that the State was seeking to admit Exhibit No. 5 into evidence. Exhibit No. 5 was a two-page report listing Home Depot faucet sales on October 4, 2013, detailing the time of each transaction, a description of the item sold, the price of the item, the register where the transaction occurred, and how the item was paid for. Defense counsel objected to the admission of this exhibit on two grounds. First, counsel noted that he only had received notice of the exhibit that morning via e-mail, despite the fact that the defense had a discovery motion on file since July. Second, counsel claimed that the exhibit constituted inadmissible hearsay and did not meet any hearsay exceptions. In response, the prosecutor claimed that he had just received the exhibit over the weekend and stated that prior to receiving the exhibit from one of the State's witnesses, he did not know if the information contained in the exhibit existed or whether it was able to be documented in the form of a report. The prosecutor further maintained that the exhibit was admissible under the business records exception to the hearsay rule. The district court agreed that the State had not violated its discovery obligations because it had provided the report to the defense once it was received. The court advised that it would rule on the report's admissibility when it was offered into evidence.

4

Alex Kohler, Home Depot's Direct Asset Protection Manager, later testified that during his investigation of this case, the corporate office generated a report for faucet sales that occurred on October 4, 2013. Kohler testified that the Home Depot corporate office maintained a secure database that detailed the sales transactions that occurred each day within a particular store and which could be used to review all transactions that occurred within a particular department. Kohler stated that he had access to a similar database and occasionally reviewed these types of sales reports. According to Kohler, the entries in these reports were made as each sales transaction occurred. Kohler further testified that the database was secure and was maintained in a manner that prevented the data from being manipulated. The district court ultimately admitted this report, identified as Exhibit No. 5, into evidence over defense counsel's renewed objection. Kohler then proceeded to testify that no faucets were sold in the store during the time period that Murray was there.

a. *Discovery under K.S.A. 2015 Supp. 22-3212*

Murray argues the district court erred in admitting Exhibit No. 5 into evidence because the State failed to disclose it until the morning of trial, violating K.S.A. 2015 Supp. 22-3212.

A district court's failure to exclude evidence that should have been disclosed prior to trial is reviewed on appeal for an abuse of discretion. *State v. Johnson*, 286 Kan. 824, 833, 190 P.3d 207 (2008). A judicial action constitutes an abuse of discretion if the action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law; or (3) based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

The State's obligation to disclose information during discovery is governed in part by K.S.A. 2015 Supp. 22-3212. See *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10

5

L. Ed. 2d 215 (1963). In relevant part, the statute requires the State to provide the defendant, upon request, "books, papers, documents . . . which are or have been within the possession, custody or control of the prosecution, and which are material to the case and will not place an unreasonable burden upon the prosecution." K.S.A. 2015 Supp. 22-3212(b)(1). Discovery under K.S.A. 2015 Supp. 22-3212 generally must be completed no later than 21 days after arraignment or "at such reasonable later time as the court may permit." K.S.A. 2015 Supp. 22-3212(h). But if a party later discovers additional material subject to discovery, the party "shall promptly notify the other party . . . of the existence of the additional material." K.S.A. 2015 Supp. 22-3212(i). A party's failure to do so may result in the district court ordering the party to permit the discovery or inspection of the undisclosed materials, granting a continuance, prohibiting the party from introducing into evidence the undisclosed materials, or entering any other order it deems just under the circumstances. K.S.A. 2015 Supp. 22-3212(i); see *State v. Bridges*, 297 Kan. 989, 998, 306 P.3d 244 (2013) (district court may exclude evidence when party fails to comply with discovery).

On July 29, 2014, Murray filed a motion to compel discovery under K.S.A. 2014 Supp. 22-3212. Specifically, the motion requested "[a]ny and all tangible evidence in the State's possession, care, custody or control relating to or consisting of . . . records, documents, papers, . . . or other tangible things which are relevant to this case."

Murray argues the district court should have denied the State's request to introduce Exhibit No. 5 into evidence as a sanction for the State's failure to provide the report to the defense until the morning of trial. He contends that if the State had exercised due diligence, it is highly likely that the State would have received the report sooner than the weekend before trial. Murray claims the report was highly prejudicial because it was used as circumstantial evidence to show that he did not purchase the faucets at the store and contends that if he had received the report sooner, he would have had more time to prepare a defense to rebut this evidence.

But contrary to Murray's argument, there is no indication that the State violated its obligation under K.S.A. 2015 Supp. 22-3212 by willfully failing to disclose evidence that it had in its possession or control. There is nothing in the record to suggest that the State either had possession or was aware of the existence of the sales report until just prior to trial. As the prosecutor stated, he only recently had learned that Kohler would be able to provide a record of faucet sales from a particular day. Kohler e-mailed the report to the prosecutor the weekend prior to trial, which the prosecutor then forwarded to defense counsel the morning of trial.

Moreover, Murray's claim of prejudice is undermined by the theory of defense he actually presented at trial. If Murray had defended on a theory that he purchased the faucets on October 4, 2013, a report submitted on the eve of trial showing that no faucets were sold while he was in the store that day would arguably be prejudicial. But Murray did not raise such an argument below. Instead, he suggested that Russon had carried the faucets into the store and then Murray had attempted to return them. Murray never informed Home Depot personnel or law enforcement that he had purchased the faucets that day in the store, nor did he present such an argument at trial. Thus, any claim that he was prejudiced by the State's failure to earlier provide him with the sales report lacks merit. Notably, during closing argument, defense counsel stated, "Also, we're given a list of the items that were sold that day. We don't care what items were sold that day. Mr. Russon brought in the faucet. They didn't come from this Home Depot."

The State was not aware of the existence of the sales report until just prior to trial. Upon receipt of the report, the State disclosed it to the defense. Under these circumstances, the State did not violate its discovery obligations under K.S.A. 2015 Supp. 22-3212. And even if it had, Murray suffered no prejudice whatsoever.

7

b. *Business records hearsay exception*

Murray also challenges the district court's admission of the sales report into evidence under the business records exception to the hearsay rule. An appellate court exercises de novo review of a challenge to the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence. *State v. Bowen*, 299 Kan. 339, 349, 323 P.3d 853 (2014).

K.S.A. 2015 Supp. 60-460 sets forth the exception to the hearsay rule for business records and reads:

> "Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and is inadmissible except:
> . . . .
> "(m) *Business entries and the like*. Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that (1) they were made in the regular course of a business at or about the time of the act, condition or event recorded and (2) the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness."

The rationale behind the business records hearsay exception is that business records ""'have a high degree of reliability because businesses have incentives to keep accurate records."' [Citations omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 78, 350 P.3d 1071 (2015). To bring evidence within the business records exception, a witness who can identify the report and explain the methods and procedures used in its production must testify and establish that the elements of K.S.A. 2015 Supp. 60-460(m) are satisfied. See *State v. Guhl*, 3 Kan. App. 2d 59, 60, 588 P.2d 957 (1979) (citing *State v. Foster*, 198 Kan. 52, 53-54, 422 P.2d 964 [1967]). Computer data compilations may be admissible as business records if a proper foundation is established at trial. *United States*

*v. Hernandez*, 913 F.2d 1506, 1512 (10th Cir. 1990). The trial court must determine whether the source of information, method, and time of preparation reflect trustworthiness. *State v. Beasley*, 205 Kan. 253, 257, 469 P.2d 453 (1970).

Murray argues that the district court improperly admitted Exhibit No. 5 under the business records hearsay exception because the report was not made close to the time of the alleged crime or in the regular course of business. He notes that the alleged crime occurred on October 4, 2013, while the document did not come into existence until just prior to trial in December 2014, suggesting that the report was only made for purposes of litigation.

Although there is no question that the sales report was printed just prior to trial, Murray's argument is misplaced and misconstrues the nature of the foundation required for its admission as a business record. The timing requirement relates to when the business made the entries. If the original computer data was kept in the ordinary course of business, the retrieval of records for purposes of litigation does not disqualify them under the business records exception. See *Hernandez*, 913 F.2d at 1512-13 ("[S]o long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice, the fact that the hard copy offered as evidence was printed for purposes of litigation does not affect its admissibility.").

Kohler's testimony clearly established that the foundational requirements of K.S.A. 2015 Supp. 60-460(m) were satisfied. In the regular course of business, Home Depot records each sales transaction as it occurs. From this database, it is possible to obtain information regarding sales that occur in specific departments on certain dates. This internal sales tracking system is maintained in a manner as to indicate trustworthiness, as it is accessible only by authorized users and cannot be manipulated. Although the sales report itself was obtained and printed in anticipation of litigation, the data contained in the report was memorialized in the store's internal database

9

contemporaneous to each sale that occurred. The sales report was admissible under the business records exception to the hearsay rule. Accordingly, the district court did not err in admitting Exhibit No. 5 into evidence at trial.

2. *Lesser included offense instruction*

Murray claims the district court should have instructed the jury on criminal deprivation of property as a lesser included offense of theft.

> "'For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015) (quoting *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 [2012]).

When the failure to give a lesser included offense instruction is challenged on appeal, we apply the same analytical framework as in *Woods* and must first determine if the issue was properly preserved. See *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). A party may not assign error for failure to give an instruction unless that party objects or the failure to give the instruction is clearly erroneous. K.S.A. 2015 Sup. 22-3414(3). Because Murray did not request that the jury be instructed on the crime of criminal deprivation of property, we review this argument for clear error. See *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). An appellate court uses a two-step process in determining whether the district court's failure to give the instruction was

clearly erroneous. The court first must consider whether there was any error at all by considering whether the instruction at issue was both legally and factually appropriate, employing an unlimited review of the entire record. If the court finds error, it must assess whether it is firmly convinced the jury would have reached a different verdict without the error. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014). If there was no error, the analysis ends. See *Armstrong*, 299 Kan. at 432.

Whether a crime is a lesser included offense of another—*i.e.*, whether it is legally appropriate—is a question of law over which an appellate court has unlimited review. *State v. Charles*, 304 Kan. 158, 165, 372 P.3d 1109 (2016).

A lesser included crime is statutorily defined, in relevant part, as "[a] lesser degree of the same crime" or "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 2015 Supp. 21-5109(b)(1), (b)(2). The statutory standard in K.S.A. 2015 Supp. 21-5109(b)(2) has been described as a "strict elements test" in that the determination is made by a comparison of the legal elements necessary to prove the greater offense and the purported lesser offense. *State v. McKissack*, 283 Kan. 721, 730, 156 P.3d 1249 (2007).

Criminal deprivation of property is "obtaining or exerting unauthorized control over property, with intent to temporarily deprive the owner of the use thereof, without the owner's consent but not with the intent of permanently depriving the owner of the possession, use or benefit of such owner's property." K.S.A. 2015 Supp. 21-5803(a). Theft is "[o]btaining or exerting unauthorized control over property . . . with intent to permanently deprive the owner of the possession, use or benefit of the owner's property." K.S.A. 2015 Supp. 21-5801(a)(1). Using the strict elements test, our Supreme Court has concluded that criminal deprivation of property is not a lesser included offense of theft because theft requires intent to permanently deprive the owner of the possession, use, or

11

benefit of the property, while the definition of criminal deprivation of property specifically excludes the intent to permanently deprive. *McKissack*, 283 Kan. at 728-29.

Murray acknowledges the holding in *McKissack* and does not argue that criminal deprivation of property is a lesser included offense of theft under a strict elements test. Rather, he contends that criminal deprivation of property and theft are differing degrees of the same crime. According to Murray, because theft and criminal deprivation of property are both degrees of the generic crime of larceny, criminal deprivation of property is a lesser included offense of theft. In support of his position, Murray cites *State v. McCarley*, 287 Kan. 167, 195 P.3d 230 (2008).

The *McCarley* court analyzed whether the varying severity levels of aggravated battery under K.S.A. 21-3414(a), (b) (now K.S.A. 2015 Supp. 21-5413[b], [g][2]) were different levels of the same offense. Our Supreme Court concluded that severity level 5 and level 8 reckless aggravated battery are lesser included offenses of severity level 4 intentional aggravated battery because they are lesser degrees of the same crime. The *McCarley* court reasoned:

> "[T]he legislature's intent is clear from the words it used. Defining various types of aggravated battery [in K.S.A. 21-3414(b)], *i.e.*, 'aggravated battery as described in' separate subsections, together with allocating different degrees of punishment for each type, establishes that level 5 and level 8 aggravated battery are lesser included offenses of level 4 aggravated battery, *i.e.*, they are 'lesser degrees of the same crime.'" 287 Kan. at 178.

Unlike the differing degrees of aggravated battery that are all contained in the same statute, theft and criminal deprivation of property are not differing degrees of the same crime. Murray's argument to the contrary was specifically rejected by our Supreme Court in *McKissack* when it overruled its decision in *State v. Keeler*, 238 Kan. 356, 364-65, 710 P.2d 1279 (1985). In *Keeler*, the Supreme Court held that criminal deprivation of

12

property was a lesser included offense of theft, reasoning that the two crimes merely involved differing degrees of intent, not different elements. 238 Kan. at 364-65. The *McKissack* court explicitly overruled *Keeler* based, in part, on statutory changes that had occurred since *Keeler* was decided. At the time *Keeler* was decided, the approach to determining whether a crime was a lesser included crime was primarily a factual one involving a determination of what facts were proved in satisfaction of the elements. Because intent was a shared element of theft and criminal deprivation of property, it made sense to view intent as a proof-driven concept separated only by degrees. But after the 1998 statutory amendment defining a lesser included offense crime as one where all elements of the lesser crime are identical to some of the elements of the charged crime, it no longer made sense to consider intent as a fluid concept changing by degrees based on facts proved at trial. See *McKissack*, 283 Kan. at 725-31. The *McKissack* court noted that the strict elements test no longer supported the conclusion that criminal deprivation of property is a lesser included offense of theft:

> "While the key element separating the two offenses still involves intent, the intent in each crime is differentiated by the use of the word 'permanently' in the case of theft and 'temporarily' in the case of criminal deprivation. These separate elements are not dynamic, but rather are fixed, independent of the facts proven. The difference between the two separate elements of each crime demonstrates that criminal deprivation of property is a separate offense and not a lesser included offense of theft." 283 Kan. at 728.

Because criminal deprivation of property is not a lesser included offense of theft, an instruction on criminal deprivation of property would not have been legally appropriate.

And even if criminal deprivation of property was a lesser included offense of theft, the facts presented at trial viewed in a light most favorable to the State reveal no evidence to support giving an instruction on the lesser included criminal deprivation of property offense. Murray's defense theory at trial was that he simply did not commit the crime. Based on this evidence, the jury had the opportunity either to believe Murray and acquit

13

him or to believe the incriminating evidence and find Murray guilty of felony theft. The evidence at trial excluded any finding that Murray exercised control over the property only with intent to temporarily deprive, instead of permanently deprive, the owner of its use. Thus, the lesser included offense instruction, even if legally appropriate, was not factually appropriate because the jury was never presented a version of the events where Murray intended to temporarily deprive Home Depot of its merchandise.

Because a lesser included instruction on criminal deprivation of property was neither legally nor factually appropriate, the district court did not err in failing to provide the jury with that instruction.

3. *Cumulative error*

Murray argues that due to the numerous alleged errors committed by the district court, cumulative error resulted and necessitates reversal of his conviction. But "'[c]umulative error will not be found when the record fails to support the errors raised on appeal by the defendant.'" *State v. Novotny*, 297 Kan. 1174, 1191, 307 P.3d 1278 (2013). Because there were no errors in Murray's conviction, he is not entitled to relief under the cumulative error doctrine.

4. *Sentencing*

Murray argues the district court erred in imposing his sentence. He first raises several issues challenging the court's reliance on his nonamenability to probation as an aggravating factor to justify an upward durational departure sentence.

The State suggests that our review of these issues is not warranted because Murray has served his prison sentence, rendering Murray's claims relating to that portion of his sentence moot. According to the Kansas Department of Corrections website, Murray

14

completed his incarceration and began serving his 12-month postrelease supervision term on April 6, 2016. The website further reflects that Murray's sentence, including postrelease supervision, expired on October 24, 2016.

We have unlimited review of the State's claim of mootness. See *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012). As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. McKnight*, 292 Kan. 776, 778, 257 P.3d 339 (2011). The mootness doctrine is one of court policy, which recognizes that the role of the court is to ""determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.""" *Hilton*, 295 Kan. at 849.

A justiciable controversy has definite and concrete issues between the parties and "adverse legal interests that are immediate, real, and amenable to conclusive relief." *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 890-91, 179 P.3d 366 (2008). Our Supreme Court has described the mootness test as a determination whether ""it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights."' [Citations omitted.]" *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014).

Although there are several exceptions to the mootness doctrine, Murray does not rely on any of them. See *State v. Montgomery*, 295 Kan. 837, 841-43, 286 P.3d 866 (2012) (explaining exception for matters raising concerns of public importance and concrete collateral consequences exception). Instead, Murray suggests that these issues are not moot because he is appealing not just the sentence imposed but also the "aggravated conviction imposed as reflected in the upward durational departure findings." But Murray's argument is not persuasive. The jury convicted Murray of theft, a severity

15

level 9 felony. The district court's departure ruling did not change the crime's severity level or otherwise render the crime itself an "aggravated" theft. Rather, given the jury's finding that Murray was not amenable to probation, the court doubled the 13-month aggravated presumptive grid sentence to 26 months. Murray has completed his prison sentence and his period of postrelease supervision, which renders his complaints about the district court's departure ruling moot.

5. *Classification of prior conviction*

Murray also claims the district court erred by classifying a prior robbery conviction as a person felony and improperly using this conviction to calculate his criminal history score.

Whether a prior conviction was properly classified as a person offense is a question of law over which this court exercises unlimited review. *State v. Dickey*, 301 Kan. 1018, 1034, 350 P.3d 1054 (2015). Interpretation of a statute is also a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Following Murray's conviction, a presentence investigation (PSI) report listed Murray's criminal history score as C, based, in part, on a 1977 Kansas robbery conviction that was classified as a person felony. Prior to sentencing, Murray objected to the classification of this prior conviction as a person offense for purposes of calculating his criminal history score. He relied on *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), *overruled by State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016), and K.S.A. 2015 Supp. 21-6810(d)(7) to argue that the crime should be classified as a nonperson offense. After hearing argument on the issue, the district court held that the conviction was properly classified as a person offense and sentenced Murray using a criminal history score of C.

16

On appeal, Murray acknowledges that *Murdock*—which held that out-of-state crimes committed before the enactment of the Kansas Sentencing Guidelines Act (KSGA) in 1993 must be classified as nonperson offenses for criminal history purposes—was expressly overruled by our Supreme Court in *Keel*. In *Keel*, the Supreme Court held that when designating a pre-KSGA conviction as a person or nonperson crime in the criminal history, the court must consider how the crime would have been classified based on the classification in effect at the time the current crime of conviction was committed. 302 Kan. at 590. When Murray committed the current crime of conviction in 2013, the crime of robbery was classified by Kansas statutes as a person felony. See K.S.A. 2015 Supp. 21-5420(c). Thus, the district court properly classified Murray's prior robbery as a person felony.

Notwithstanding the holding in *Keel*, Murray asserts that relief is warranted under K.S.A. 2015 Supp. 21-6810(d)(7), which provides:  "Prior convictions of a crime defined by a statute which has since been repealed shall be scored using the classification assigned at the time of such conviction." Murray argues that because the statute he was convicted under in 1977—K.S.A. 21-3426—was repealed as part of the 2010 recodification of the Kansas Criminal Code, this prior conviction must be reclassified as a nonperson offense.

In 2010, the Kansas Legislature adopted a recodification of the Kansas Criminal Code, which became effective on July 1, 2011. See L. 2010, ch. 136, sec. 1. The purpose of the recodification was to reorganize the statutes to place them in a more user-friendly order, revise the statutory language to add clarity, combine statutes to reduce their number, and eliminate unnecessary statutes. To that end, the Kansas Criminal Code Recodification Commission presented two separate proposals to the legislature:  (1) proposals recodifying existing statutes without making substantive changes and (2) proposals recommending policy changes, *i.e.*, changes to the substantive law. Kansas Criminal Code Recodification Commission, 2010 Final Report to the Kansas Legislature,

17

Vol. I, 15, 17. Thus, the practical effect of the recodification was to renumber and reorder the statutes, while generally leaving the substance of these statutes intact. In so doing, the legislature repealed the prior criminal statutes while simultaneously enacting the renumbered statutes. The criminal code contains a table that cross-references the old statute number with the new statute number assigned under the recodification. See K.S.A. 2015 Supp. Vol. 2A 2011 Criminal Code Table, pp. 314-18.

Courts must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). K.S.A. 21-3426, the statute under which Murray was convicted in 1977, was technically repealed pursuant to the 2010 recodification of the criminal code. Notably, the definition of robbery did not substantively change under the recodification. See K.S.A. 21-3426; K.S.A. 2015 Supp. 21-5420(a). Statutory repeal under these circumstances could not have been the type of repeal contemplated by the legislature in K.S.A. 2015 Supp. 21-6810(d)(7). Instead, the legislature presumably wanted to provide direction for classifying crimes as person or nonperson offenses in situations where a statute defining a crime no longer existed. Additionally, the Criminal Code Table that cross-references the old and new statute numbers would be meaningless if the statutes themselves had been changed substantively and could no longer be found within the criminal code. Finally, Murray's interpretation of K.S.A. 2015 Supp. 21-6810(d)(7) would result in all pre-1993 Kansas convictions that did not expressly denote person and nonperson offenses being scored as nonperson offenses. Such a result would render the statutory provisions outlining the classification of prior burglary convictions and adjudications as person or nonperson felonies meaningless. See K.S.A. 2015 Supp. 21-6811(d). The district court properly classified Murray's prior robbery conviction as a person felony. See *Keel*, 302 Kan. at 590. Murray is not entitled to reclassification of his crime under K.S.A. 2015 Supp. 21-6810(d)(7).

Murray's challenge to his sentencing enhancement is dismissed as moot, and his conviction of felony theft is affirmed.

Affirmed.