NOT DESIGNATED FOR PUBLICATION

No. 117,949

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WENDELL CLARENCE AGEE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed November 30, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., LEBEN and BRUNS, JJ.

PER CURIAM:  Wendell Clarence Agee admitted to stealing over $13,000 from Children's Cottage over the course of seven months. Agee told police that he took the money for health reasons and for promises made, but not kept, by Children's Cottage. At trial, Agee testified that he took the money so that he could invest in what he later learned was a scam involving a purported Nigerian oil company. Agee's sole defense at trial was that he did not intend to permanently deprive Children's Cottage of its money because he was going to return the money after his investment in the oil company came through. Because we find that after reviewing all the evidence in the light most favorable to the

1

prosecution we are convinced the jury could have found the defendant guilty of theft beyond a reasonable doubt, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The State charged Agee with one count of theft, alleging that he had obtained or exerted unauthorized control over money, with the intent to permanently deprive the owner, Children's Cottage, of possession, use, or benefit of the money.

The facts, as testified to at trial, are largely undisputed.

Over 15 years ago, Dorris Marshall, the owner of a child care facility known as Children's Cottage, hired Agee, an insurance salesman for Missouri Insurance Agency, to set up the business' insurance. Marshall provided Agee with her financial information so that he could set up the insurance. In January 2015, an employee with Capital One called Marshall and informed her that some unauthorized payments were made from her bank account to a personal Capital One credit card account. Marshall learned that Agee made the transactions. Marshall's sister, and partner in the business, Diane Carter, was present when Marshall learned about the transactions. Neither she nor Marshall authorized Agee to make the transactions. Carter called Agee and asked him if he took money from the account. Agee told her that he did.

It was discovered, and undisputed, that Agee made 27 unauthorized payments to Capital One between May and December 2014, for a total of $13,165. When questioned by police, Agee admitted that what he did was wrong. He told the police that he took the money for health reasons and promises made, but not kept, by Children's Cottage. He added that he knew that was not a justifiable reason.

2

At trial, Agee gave one new reason for taking the money. He stated that he fell off a ladder in 2012 and injured his back. This required expensive surgery and he lost a lot of his business due to his recovery time. At about the same time, Congress passed the Affordable Care Act, which resulted in a significant decrease in the commissions he could receive for insurance sales. While going through hard times financially, Agee received an email purportedly from The National Oil Company of Libya, inviting him to a seat on its board. In August 2014, Agee received a certificate that supposedly certified him as a member of the Company's board. Agee paid the scammers $12,000 for the certificate, $12,000 for a promised—but never delivered—oil shipment, and other amounts for various incidentals. In another email business transaction, Agee sent $755 and other "banking fees" to a man named Master John Chu, who promised him a return on his investment of $4 million. Agee believed that he sent the scammers around $30,000 in total. Agee later realized, 10 months after he was charged in this case, that the emails were a scam. Agee said that he fell for the scam due to desperation. He stated that his intention was always to pay the money back that he took from Children's Cottage, "[e]very dime, with interest." He concedes that he never told the police officers about the investment in the Libyan oil company.

The jury was instructed that to find Agee guilty it must find, in part, that Agee "intended to deprive Children's Cottage permanently of the use or benefit of the property."

The jury found Agee guilty of theft. He was sentenced to 6 months in jail and given probation. Agee appeals his conviction.

3

On appeal, Agee argues that there was insufficient evidence presented to support the jury's conclusion that he intended to *permanently* deprive Children's Cottage of the money he took. We begin our analysis with our standard of review.

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Here there was sufficient evidence to support the jury's verdict. Agee stole money from Children's Cottage over a period of seven months. When initially questioned, Agee did not tell police officers that he planned to pay the money back; instead, he said that he took the money for health reasons and for promises made but not kept by Children's Cottage. The fact that Agee testified at trial that he intended to pay the money back does not change the outcome of this case. The jury heard the evidence and obviously decided that Agee's statements at trial were not credible. See *State v. Kettler*, 299 Kan. 448, 471-72, 325 P.3d 1075 (2014) (jury not bound to accept defendant's version as the truth). This court does not make witness credibility determinations. *Chandler*, 307 Kan. at 668. Agee did not seek a loan from Children's Cottage, nor did he tell the owners of his plight and need for money. He used the money to pay his personal credit card. He did not pay it back. He testified that he knew his actions were illegal. The jury could reasonably conclude from the evidence that Agee intended to permanently deprive Children's

4

Cottage of its money. See *State v. Keeler*, 238 Kan. 356, 359, 710 P.2d 1279 (1985) (holding intent to permanently deprive existed where defendant made no attempt to return stolen automobile for several days before it was recovered), *overruled on other grounds by State v. McKissack*, 283 Kan. 721, 156 P.3d 1249 (2007).

When viewed in the light most favorable to the prosecution, sufficient evidence existed to support the jury's verdict that Agee intended to permanently deprive Children's Cottage of its money.

Affirmed.